KELLY-GOODFELLOW SHOE COMPANY, Respondent, v. SALLY, Defendant; HASSELL, Interpleader, Appellant.

**St. Louis Court of Appeals, October 17, 1905.**

1. **ATTACHMENT: Interplea.** A statutory interplea is in its essential characteristics an action of replevin and, in order to prevail, an interpleader must show in himself right to the immediate possession of the property interpleaded for.

2. ———: ———: **Commingling Goods.** Where the fraudulent vendee of goods, attached in an action against his fraudulent vendor, commingles with them goods of his own, he cannot recover his own goods on the trial of his interplea for the goods, unless he can identify them so as to separate them from the general stock.

3. **JURY: Majority Verdict: Constitutional Amendment.** The amendment to section 28, article 2, of the Constitution, allowing a majority verdict, was self-enforcing and required no legislation in order that a valid majority verdict might be rendered.

4. ———: ———: ———: **Signing Verdict.** In a case tried after such amendment became operative and before the act of the Legislature requiring the signatures of the majority agreeing to a verdict, a verdict agreed to by nine of the jury but signed only by the foreman, was valid.

5. **PRACTICE: Numerous Instructions.** The appellate court will not consider errors committed in refusing instructions where they are unnecessarily numerous and where instructions were given properly defining the law of the case.

6. ———: **Weight of Evidence.** Where there is sufficient substantial evidence to sustain a verdict which has received the sanction of the trial judge, in overruling a motion for new trial, the appellate court will not set it aside on the ground that it is against the weight of evidence.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*J. B. Harrison* for appellant.

The amendment to our Constitution, adopted at the election held on the eighth day of November, 1900, became operative on the nineteenth day of December, 1900. State v. Kyle, 166 Mo. 287; Girdner v. Bryan, 94 Mo. App. 27. This verdict is not in accordance with the common law, nor it is in accordance with the act of the legislature.

*Thomas M. & Cyrus H. Jones* and *Jamison & Thomas* for respondent.

(1) The constitutional amendment of 1900 of section 25, permitting three-fourths of the jury of twelve men to find a verdict, provides as follows: "The right of trial by jury as heretofore enjoyed, shall remain inviolate, but a jury for the trial of civil and criminal cases in courts not of record, may consist of less than twelve men as may be prescribed by law; and that a two-thirds majority of such number prescribed by law concurring may render a verdict in all civil cases; and that in the trial by jury of all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict." Session Acts 1899, p. 382. This constitutional amendment went into effect on the nineteenth day of December, 1900. State v. Kyle, 168 Mo. 287; Girdner v. Bryan, 94 Mo. App. 27. (2) The verdict of the jury in this case was rendered on May 30, 1901. The law requiring that nine of the jurors shall sign the verdict was approved March 12, 1901 (Session Acts 1901), and did not go into effect until June 12, 1901. Art. 4, sec. 36 of the Constitution. The constitutional amendments above referred to having been in force and effect

at the time of the rendition of the judgment, and the act above referred to approved March 1, 1901, not being in effect at the time of the rendition of the judgment, it was not necessary that all of the nine jurors sign the verdict. But even had the statute been in force directing that a verdict of three-fourths of the jury be signed by the nine, a failure so to sign would not render the verdict invalid. Gurley v. O'Dwyer, 61 Mo. App. 348; Morrison v. Overton, 20 Ia. 465; Paterson v. Murphy, 68 Ga. 281; Burton v. Bandies, 2 Tex. 203; Hardy v. State, 19 Ohio St. 579; Berry v. Pusey, 80 Ky. 166-170. (3) It is unquestionably the law of this State, that where one party asks the court to give a large number of instructions, as the interpleader did in this case, (the interpleader having asked fifteen instructions) the court has the right, and it is the better practice for the court to reject all of said instructions, and give its own instructions as to the law in the case. Gelvin v. Railroad, 21 Mo. App. 273; State v. Tomasitz, 144 Mo. 86; West v. West, 144 Mo. 119; State v. Easton, 138 Mo. 103; State v. Frazier, 137 Mo. 317; Desberger v. Harrington, 28 Mo. App. 632.

BLAND, P. J.—The following statement and opinion prepared by Judge REYBURN, when a member of this court, is adopted as the opinion of the court:

In November, 1898, plaintiff, an incorporated wholesale merchant of the city of St. Louis, brought an attachment suit against J. B. Sally, in the circuit court of Texas county, and caused the writ of attachment to be levied upon a stock of miscellaneous merchandise contained in a store at Arthurs Creek, situated in that county, invoiced and appraised by the sheriff at a total valuation of $1,540. N. C. Hassell interpleaded for the goods, and founded his claim thereto upon their purchase from the defendant, setting forth in his interplea that on November 12, 1897, and prior to the time of interpleading he conducted a general mercantile business

near Arthurs Creek, and purchased from many merchants a large amount of goods and especially those attached; that he had bought the larger part of all such stock of goods from J. B. Sally but owed therefor to Sally or his assigns a note for over $3,000, given for goods purchased of him at different times. That such property had been unlawfully seized as the property of Sally, any interest or right of the latter therein was controverted, and the release of the levy, and the delivery of the stock to interpleader was prayed.

The answer of plaintiff specifically denied the ownership of interpleader, averred that the personalty was the property of the defendant, and their possession in Hassell for the purpose of assisting Sally in defrauding his creditors.

The third trial terminated in a verdict for the plaintiff in the attachment, two earlier jury trials failing to result in any verdict.

The testimony demonstrated that the interpleader had varied the occupation of a farmer in Texas county with peddling merchandise, and in August, 1897, built a storehouse near Arthurs Creek, and obtained the major part of the stock of merchandise that went into it from a general store at Lecoma, a village in Dent county, belonging to Sally, who lived, however, in Rolla, Phelps county. The store near Arthurs Creek was opened August 12th and the goods were obtained from Sally's stock from time to time till October 20th; on October 22d Sally appeared at Arthurs Creek with a statement, a settlement was had, a balance struck showing him a creditor of interpleader in a total sum, apparently $3,190, and the account closed by delivery by interpleader to Sally of a note for $3,060 bearing eight per cent interest maturing in one year, also checks aggregating $80 and $50 cash and receipt in full from Sally was returned. The testimony was voluminous and in hopeless conflict; at its close the interpleader asked fifteen in-

structions which the court refused, and submitted the case in a charge to the jury, made up of a series of instructions which will presently be reverted to so far as deemed essential.

1.   The sole issue involved in the controversy was whether Hassell had become owner of the goods attached by their purchase at intervals during the months of August, September and October preceding the attachment; that he was in peaceable possession of the goods when they were seized was not controverted, but whether such possession was by virtue of acquiring them by bona fide purchase was the decisive question in the case.   The theory upon which the interpleader sought to recover was grounded on his buying the goods during the months named, and prior to October twenty-second, when it was asserted the accounting was had, and the indebtedness closed by note, checks and cash as detailed. No proof was offered nor any pretense made of any buying of the goods afterwards, and no issues were involved affecting priorities of right, or to mere proceeds of sale requiring the court to define the legal elements constituting a sale between the interpleader and his alleged vendor as contended by appellant, and all instructions submitting such features were properly refused.  As has been frequently announced, a statutory interplea in its essential characteristics is an action of replevin, and it devolved upon the interpleader to show in himself the existence of legal right or title to the immediate possession of the stock of merchandise.   [Rice v. Sally, 176 Mo. 107, 75 S. W. 398.]

2.   It may be conceded that the interpleader had bought goods in his stock from other parties than defendant in the attachment, but any so obtained remaining unsold at time of levy had been commingled by him with the goods derived from Sally, and the onus was upon him to identify them, so that they could be distinguished and separated from the general bulk of the like goods, and whether from inability or other cause not

disclosed having failed to do this, he was not entitled to their recovery. [Adam Roth Grocer Co. v. Lewis, 69 Mo. App. 446; Kauffman v. Schilling, 58 Mo. 218.]

3. After deliberation for many hours without finding a verdict, the jury were summoned before the court, and a member announced that they could not agree, and the court thereupon gave a further instruction of its own according to the effect that nine of the number might agree upon a verdict to be returned into court signed by a juryman as foreman and the jury retired for further consideration, and subsequently a verdict for the attaching plaintiff was brought in, signed by one of the jury as the foreman; the question of attorney for interpleader evoked answer from such foreman that nine had agreed to the finding.

The amendment of section 28, article 2, of the State Constitution, adopted at the general election November 8, 1900, went into effect upon the official canvass of the vote on the 19th day of December succeeding. [State v. Kyle, 166 Mo. 287, 65 S. W. 763.] The doubt intimated by appellant whether it was self-enforcing, and that it was clear from the language adopted in the resolution that it was not intended by the Legislature to be self-enforing as asserted, is negatived by the terms employed in framing it, as an inspection of the resolution itself will demonstrate. [Laws of 1899, 382.] Further, it is manifest that submitting it to the test promulgated in State v. Kyle, supra, the amendment is unquestionably self-executing, and requiring the aid of no ensuing legislative action to put it into operation. The legislation providing for the signature alone of the foreman, if the jury should all concur in the verdict, but if not unanimous the signatures also of those who agreed thereto, did not become operative until June 16, 1901. [Laws 1901, 190, and mem. at end of same.] Even if it be conceded that the unauthorized naked statement of the foreman, that the verdict was found by the constitutional majority then lately authorized, should be accepted the express

law of the State, operative at the time of the trial, was silent as to the method in which such verdict should be returned, and the form of the verdict being in accordance with immemorial usage which prior sanction or evidenced a unanimous verdict, sufficiently authenticated the verdict of the lesser number and constituted a valid verdict.

4. As stated, the interpleader submitted fifteen instructions which were collectively refused. It is needless here to reiterate the frequent condemnation by the appellate courts of this State of useless augmentation of instructions, and their commendation of the practice of confining them to the number essential to comprehend the entire features of the particular case. The issues in this controversy were neither complex nor numerous nor the legal principles controlling them involved or intricate, and the needless multiplication of instructions would but tend to complex and confuse the jury in its deliberations. The charge of the court was sufficiently elaborate and embraced every phase of the case as favorably as the interpleader could reasonably demand and clearly displayed the issues in simplified but collective form. If this court was authorized by law to weigh the evidence, it would not be warranted by the record here exhibited to pronounce the verdict wholly unwarranted and against the weight of the evidence as urged by appellant. The record abounds with testimony upon which the verdict found could be firmly based by the jury, and it has received the sanction of the learned judge presiding at the trial, to whom was delegated the judicial discretion of awarding a new trial if in his judgment it was repugnant to the weight of the evidence. No reversible error has been manifested and the judgment is affirmed. *Nortoni, J.,* concurs; *Goode, J.,* not sitting.